UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

Nº 09-CV-0979 (JFB)
_____

JENNEL NESBITT

Petitioner,

VERSUS

ELIZABETH WILLIAMS,

Respondent.

_____

MEMORANDUM AND ORDER
August 8, 2011
_____

Joseph F. Bianco, District Judge:

Jennel Nesbitt (hereinafter "Nesbitt" or "petitioner") petitions this Court *pro se* for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, to vacate her conviction in a judgment rendered on August 9, 2005. Following a jury trial, in the County Court, Nassau County (the "trial court"), petitioner was convicted of one count of Burglary in the First Degree (N.Y. Penal Law § 140.30[1]), one count of Criminal Possession of a Weapon in the Third Degree (N.Y. Penal Law § 265.02[4]), seven counts of Criminal Possession of Stolen Property in the Fourth Degree (N.Y. Penal Law § 165.45[2]), and two counts of Criminal Possession of Stolen Property in the Fifth Degree (N.Y. Penal Law § 164.50). Petitioner was sentenced to concurrent, determinate terms of imprisonment, the longest of which was twelve years.

Nesbitt challenges her conviction on four grounds. Specifically, petitioner asserts that (1) her conviction was not supported by legally sufficient proof; (2) her imposed sentence was vindictive, harsh, and excessive; (3) she was denied effective assistance of trial counsel; and (4) the court failed to give a circumstantial evidence charge during jury instructions.

Respondent seeks to dismiss the claims regarding legally sufficient proof, ineffective assistance of counsel, and the circumstantial jury charge as unexhausted or procedurally barred. Respondent also opposes all of the claims on the merits. For the reasons set forth below, the Court finds

1

that petitioner has procedurally defaulted on her claims of vindictive sentence, insufficiency of the evidence and failure to give the circumstantial evidence charge. In any event, the Court has examined each of the petitioner's claims on the merits and concludes that there is no basis for habeas relief.

I. BACKGROUND

A. Facts

The following facts were adduced from the petition and documents attached thereto, as well as from the state court and appellate record.

On June 26, 2004, Dr. Carol Singer ("Singer"), her husband John Dunn ("Dunn") and her nephew heard their home burglar alarm sound. (Tr. at 145-47.) When Singer entered the kitchen, she saw a male intruder in a red shirt who she thought was leaving the house by walking towards her laundry room, which was next to the garage. (*Id*. at 147.) She later saw a window in her garage pushed in but no cars in the driveway. (*Id.* at 148-49.) She then called 9-1-1. (*Id.* at 157.)

When responding to the call, Officer Robert Piampiano ("Piampiano") saw two individuals, one wearing a red item, on a motorcycle speeding away from the direction of the Singers' house. (*Id.* at 163, 165.) The motorcycle was traveling at approximately 90-100 miles per hour on a road with a thirty mile per hour speed limit. (*Id.* at 165.) Piampiano then followed the motorcycle and notified other officers. (*Id.* at 166-67.)

Upon receiving notification, Officer Charles Hanney ("Hanney") testified that he responded to the call. (*Id.* at 188-90.) Hanney observed two people riding the motorcycle, one wearing red and the other dark clothing, going with the speed of traffic. (*Id.* at 190-91.) When officers signaled the motorcycle to pull over, the riders looked back at the officers and sped away. (*Id.* at 191.) They followed the motorcycle onto a smaller road. (*Id.*) Upon reaching the cul de sac area of that road, Hanney testified that he observed the motorcycle on the ground by the curb and saw the two riders running into the woods. (*Id.* at 192.) Officers ran after the motorcycle riders, and an officer yelled for them to stop. (*Id.* at 194.) Hanney testified that petitioner was wearing dark clothing. (*Id*. at 220.)

Officer Sean Balsamello ("Balasmello") testified that as he closed in on the petitioner, the petitioner dropped a black bag and tripped. (*Id.* at 230.) At this time, Balsamello got on top of her and placed her under arrest. (*Id.* at 230-31.) Officer Clarke ("Clarke") testified that he checked the black bag soon after and found a woman's pocketbook, a man's wallet and duct tape; other items later found in the bag were a small flashlight and two crowbars. (*Id.* at 289-90.) Detective O'Hayon ("O'Hayon") testified that further investigation revealed that the pocketbook and wallet, which contained a checkbook and credit cards, belonged to Singer and Dunn. (*Id.* at 338-40.)

When the petitioner was escorted back to the police vehicle, Clarke testified that he conducted a pat down search of Nesbitt, at which time he found a black ski mask and two gloves in Nesbitt's sweatshirt. (*Id.* at 288-89.) She had these items on her despite the seventy-five degree weather outside. (*Id.* at 172.) Nesbitt then informed the officers and detectives that her leg hurt, so Leake sat her in the back of a police vehicle. (*Id.* at

322.) Leake testified that she asked Nesbitt if she had anything on her that she should not, at which time Nesbitt indicated that she had a gun in her pocket. (*Id.*) Inspection of the gun revealed that it was loaded. (*Id.*).

Detective O'Hayon testified that he heard petitioner say that she had been given the gun for protection by the other motorcycle rider, who she referred to as Damien. (*Id.* at 353.) She claimed that she did not know Damien's last name, where he lived, or anything about his current whereabouts. (*Id.* at 521-22.) Petitioner testified that she and Damien had come from her residence in Brooklyn to visit his Long Island house. (*Id.* at 490, 496-97.) She claimed that the two stopped along the way at what Damien indicated was his sister's house and told Nesbitt to wait outside while he ran in, at which point Nesbitt waited outside down the street on the motorcycle. (*Id.* at 498.) O'Hayon testified that petitioner further explained that when Damien returned from the home, he handed her a woman's pocketbook and the two sped off. (*Id.* at 353.) Petitioner denied telling police that any such exchange of the pocketbook occurred. (*Id.* at 516.)

While on the stand, petitioner contended that she had never known Damien's last name or whereabouts. (*Id.* at 485-87.) She testified that they had met a few months prior on a basketball court and began socializing together soon after. (*Id.* at 487-88.) At one point in May, petitioner testified that she had worn the ski mask that Clark found in her sweatshirt pocket, but claimed that she did not wear it on the night of her arrest. (*Id.* at 489-90.) Nesbitt claimed only to wear it in an effort to protect her face from windburn. (*Id.* at 489.) When testifying, petitioner also denied that Clark recovered the ski mask from her sweatshirt. (*Id.* at 512.) Nesbitt claimed that she was unaware that Damien set out to commit a robbery. When Damien and petitioner reached the cul de sac area, petitioner testified that Damien told her to "come on," so she followed him. (*Id.* at 507-08.) She claimed that she was unaware of any police presence until she was brought out of the woods. (*Id.* at 507.) Petitioner also asserted that the recovered black bag was never found on her person; instead, she testified that another officer later emerged from the woods holding the black bag. (*Id.* at 515.)

DNA was taken from petitioner with buccal swabs. (*Id.* at 467.) DNA from petitioner matched the DNA found around the mouth area of the ski mask collected by Clark. (*Id.* at 469-70.)

B. Procedural History

1. State Court Proceedings

On August 9, 2005, the jury found petitioner guilty on all counts: one count of Burglary in the First Degree, one count of Criminal Possession of a Weapon in the Third Degree, seven counts of Criminal Possession of Stolen Property in the Fourth Degree, and two counts of Criminal Possession of Stolen Property in the Fifth Degree. (Tr. at 692-96.)

Petitioner was sentenced on September 28, 2005, the greatest of which was a determinate term of imprisonment of twelve years, to run concurrently with the other sentences, and post-release supervision of five years. (Sentencing Tr. at 13-14.) Additionally, the court imposed restitution in the amount of $3000.[1] (*Id.*; Hab. Pet. at 1.)

---

[1] The Court received a letter from petitioner alleging that the trial court had waived her restitution fees, but that such a waiver was

3

Petitioner appealed her conviction to the New York Supreme Court, Appellate Division Second Department ("Appellate Division"), on three grounds: (1) that the charges against the defendant were not proven beyond a reasonable doubt; (2) that the legal elements of the burglary count were not established by legally sufficient evidence; and (3) that defendant was given an unduly harsh, excessive sentence. (Pet'r's App. Div. Mot. dated September 26, 2006, at 2, 12.)

On June 26, 2007, the Appellate Division affirmed the trial court's ruling. *People v. Nesbitt*, 837 N.Y.S.2d 579, 579 (N.Y. App. Div. 2007). The court held that petitioner's challenge to legal sufficiency of the evidence was unpreserved for appellate review, denying plaintiff's claims in the alternative on the merits. *Id.* The court also concluded that petitioner's sentence was not excessive. *Id.*

Petitioner applied for a writ of error coram nobis to the Appellate Division to vacate judgment on the ground of ineffective appellate counsel. On December 26, 2007, the Appellate Division denied petitioner's application as meritless. *People v. Nesbitt*, 847 N.Y.S.2d 861 (N.Y. App. Div. 2007).

The New York Court of Appeals denied petitioner's application for leave to appeal from her direct appeal on April 10, 2008. *People v. Nesbitt*, 889 N.E.2d 88 (N.Y. 2008).

On February 2, 2009, petitioner filed a motion to vacate her conviction pursuant to New York Criminal Procedure Law § 440.10 on the ground of ineffective

---

omitted from the record. There is no evidence that plaintiff presented this claim to the highest state court. This claim is therefore unexhausted. *See infra* Section III.A.1.

assistance of trial counsel. Specifically, petitioner argued that counsel was ineffective based on his "(1) failure to investigate material evidence; (2) failure to object to errors that occurred during trial that made the trial fundamentally unfair in violation of the 14th Amendment; (3) failure to object to prosecutorial misconduct during summation; and (4) failure to make a meritorious trial order of dismissal." (Hab. Pet. at 4.) On October 9, 2009, while the petitioner's habeas corpus petition was pending, the court denied petitioner's motion. (Pet'r's Supp. Reply Br. at 6, 8.) While the instant claims were pending, petitioner applied for permission to appeal to the Appellate Division pursuant to New York Criminal Procedure Law § 450.15 and § 460.15. The court denied this motion on March 19, 2010. (*Id.* at 7.)

2. The Instant Petition

Nesbitt's petition was filed with the Court on February 25, 2009. Respondent submitted her opposition on May 12, 2009. Petitioner's reply brief to respondent's opposition was filed with the Court on June 4, 2009. Petitioner's supplemental reply brief was filed with the Court on April 16, 2010. The Court has fully considered the arguments and submissions of the parties.

II. STANDARD OF REVIEW

To determine whether petitioner is entitled to a writ of habeas corpus, a federal court must apply the standards of review provided in 28 U.S.C. § 2254, as amended by AEDPA, which provides, in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was

4

adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "'Clearly established Federal law'" is comprised of "'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'" *Green v. Travis*, 414 F.3d 288, 296 (2d Cir. 2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412-13. A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.* at 413.

AEDPA establishes a deferential standard of review: "'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams*, 529 U.S. at 411). The Second Circuit added that, while "'some increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence.'" *Gilchrist*, 260 F.3d at 93 (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)). Finally, "if the federal claim was not adjudicated on the merits, 'AEDPA deference is not required, and conclusions of law and mixed findings of fact and conclusions of law are reviewed *de novo*.'" *Dolphy v. Mantello*, 552 F.3d 236, 238 (2d Cir. 2009) (quoting *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)).

III. DISCUSSION

A. Procedural Bar

For the reasons set forth below, the Court is procedurally barred from reviewing petitioner's sufficiency of the evidence and improper jury instruction claims.[2] In

---

[2] Respondent argues in her opposition that petitioner's claims for ineffective assistance of trial counsel are unexhausted because a decision is still pending from state court on petitioner's Section 440.10 motion. However, a supplemental letter submitted by petitioner after respondent's opposition was filed indicates that the Supreme Court of Nassau County dismissed petitioner's motion because she failed to comply with filing procedures. (Pet'r's Supp. Reply Br. at 8-10.) Specifically, it appears that petitioner failed to file "sworn allegations supporting her claim." (*Id*. at 10.) As a result, the Court deems petitioner's ineffective assistance of trial counsel claim exhausted but meritless for the reasons stated below.

5

addition, even assuming *arguendo* that these claims are not barred from review, as discussed *infra* the claims are also without merit.

### 1. Legal Standard

As a threshold matter, a district court shall not review a habeas petition unless "the applicant has exhausted the remedies available in the courts of the state." 28 U.S.C. § 2254(b)(1)(A). Although a state prisoner need not petition for certiorari to the United States Supreme Court to exhaust his claims, *see Lawrence v. Florida*, 549 U.S. 327, 333 (2007), petitioner must fairly present his federal constitutional claims to the highest state court having jurisdiction over them. *See Daye v. Attorney Gen. of N.Y.*, 696 F.2d 186, 191 n.3 (2d Cir. 1982) (en banc). Exhaustion of state remedies requires that a petitioner "fairly present[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Pickard v. Connor*, 404 U.S. 270, 275 (1971) (quotation marks omitted) (alteration in original)).

"[I]t is not sufficient merely that the federal habeas applicant has been through the state courts." *Picard*, 404 U.S. at 275-76. To provide the State with the necessary "opportunity", the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), alerting that court to the federal nature of the claim and "giv[ing] the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see also Duncan*, 513 U.S. at 365-66. "A petitioner has 'fairly presented' his claim only if he has 'informed the state court of both the factual and the legal premises of the claim he asserts in federal court.'" *Jones v. Keane*, 329 F.3d 290, 294-95 (2d Cir. 2003) (quoting *Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997) (quoting *Daye*, 696 F.2d at 191)); *see also Jones v. Vacco*, 126 F.3d 408, 413 (2d Cir. 1997) (quoting *Daye*, 696 F.2d at 191).

Like the failure to exhaust a claim, the failure to satisfy the state's procedural requirements deprives the state courts of an opportunity to address the federal constitutional or statutory issues in a petitioner's claim. *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). "[A] claim is procedurally defaulted for the purposes of federal habeas review where 'the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Reyes v. Keane*, 118 F.3d 136, 140 (2d Cir. 1997) (quoting *Coleman*, 501 U.S. at 735) (additional citations omitted). Where the petitioner "can no longer obtain state-court review of his present claims on account of his procedural default, those claims are . . . to be deemed exhausted." *DiGuglielmo v. Smith*, 366 F.3d 130, 135 (2d Cir. 2004) (citing *Harris v. Reed*, 489 U.S. 255, 263 n.9 (1989) and *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991)). Therefore, for exhaustion purposes, "a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." *Keane*, 118 F.3d at 139 (quoting *Hoke*, 933 F.2d at 120) (quoting *Harris*, 489 U.S. at 263 n.9)).

A petitioner's federal claims may also be procedurally barred from habeas corpus

review if they were decided at the state level on "independent and adequate" state procedural grounds. *Coleman*, 501 U.S. at 729-33. To be independent, the "state court must actually have relied on the procedural bar as an independent basis for its disposition of the case," *Harris*, 489 U.S. at 261-62, by "clearly and expressly stat[ing] that its judgment rests on a state procedural bar." *Id.* at 263 (internal quotation marks omitted). The procedural rule at issue is adequate if it is "firmly established and regularly followed by the state in question." *Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999) (internal quotation marks omitted). However, there is a "small category" of "exceptional cases in which [an] exorbitant application of a generally sound [procedural] rule renders the state ground inadequate to stop consideration of a federal question." *Lee v. Kemna*, 534 U.S. 362, 376, 381 (2002). Nevertheless, "principles of comity . . . counsel that a federal court that deems a state procedural rule inadequate should not reach that conclusion lightly or without clear support in state law." *Garcia*, 188 F.3d at 77 (quotation marks omitted).

If a claim is procedurally barred, a federal habeas court may not review the claim on the merits unless the petitioner can demonstrate both cause for the default and prejudice resulting therefrom, or if he can demonstrate that the failure to consider the claim will result in a miscarriage of justice. *Coleman*, 501 U.S. at 750. Petitioner may demonstrate cause by showing one of the following: "(1) the factual or legal basis for a petitioner's claim was not reasonably available to counsel, (2) some interference by state officials made compliance with the procedural rule impracticable, or (3) the procedural default was the result of ineffective assistance of counsel." *McLeod v. Graham*, No. 10 Civ. 3778 (BMC) 2010 WL 5125317, at *3 (E.D.N.Y Dec. 9, 2010) (citing *Bossett v. Walker*, 41 F.3d 825, 829 (2d Cir. 1994)). Such prejudice can be demonstrated by showing that the error "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Torres v. Senkowski*, 316 F.3d 147, 152 (2d Cir. 2003). A miscarriage of justice is demonstrated in extraordinary cases, such as where a constitutional violation results in the conviction of an individual who is actually innocent. *Murray v. Carrier*, 477 U.S. 478, 496 (1986). To overcome a procedural default based on miscarriage of justice, petitioner must demonstrate that "in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt" and would require "new reliable evidence . . . that was not presented at trial." *House v. Bell*, 547 U.S. 518, 536-37 (2006).

2. Application

a. Sufficiency of the Evidence Claim

Petitioner argues that the evidence was insufficient to find her guilty on all charges beyond a reasonable doubt. (Hab. Pet. at 5-6.) Respondent asserts that such a claim is procedurally barred because she did not raise this issue with the trial court. (Resp't's Opp. Br. at 19.) On direct appeal, the Appellate Division explicitly determined that petitioner's claim concerning the sufficiency of the evidence was unpreserved for appellate review. *People v. Nesbitt*, 837 N.Y.S.2d 579, 579 (N.Y. App. Div. 2007) ("The defendant's challenge to the sufficiency of the evidence is unpreserved for appellate review, as her general motions to dismiss at the close of the People's case and at the close of all the evidence failed to specify any grounds for dismissal."). In the alternative, the court dismissed the claim on the merits. *Id.* This Court concludes that the

Appellate Division's dismissal of this claim was based on an independent and adequate state law procedural ground. This Court is thereby barred from reviewing the claim on the merits.

New York's preservation doctrine is an adequate procedural ground because it is firmly established and regularly followed. *See Garvey v. Duncan*, 485 F.3d 709, 715-16 (2d Cir. 2007); *Glen v. Bartlett*, 98 F.3d 721, 724-25 (2d Cir. 1996) (finding that failure to preserve issue for appeal was adequate and independent state law ground precluding federal habeas review and further noting that "federal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate ground, even where the state court has also ruled in the alternative on the merits of the federal claim" (quoting *Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990))); *see also Fernandez v. Leonardo*, 931 F.2d 214, 215-16 (2d Cir. 1991).

Notwithstanding petitioner's failure to preserve her claim, this Court may still consider it on the merits if petitioner can demonstrate cause and prejudice if it is not considered, or that failure to consider the claim will result in a miscarriage of justice, *i.e.*, that she is actually innocent of the crimes for which she was convicted. *See Coleman*, 501 U.S. at 748-51; *Murray,* 477 U.S. at 496. Petitioner has failed to demonstrate cause for the default because she has not made any allegations either that the factual or legal basis was unavailable to trial counsel or that there was any interference by state officials. As discussed below, the procedural default was not the result of ineffective assistance of counsel. *See infra* Section III.B.4. Petitioner has also failed to demonstrate that a miscarriage of justice would occur if the claim is not considered by this Court. Petitioner alleges that she is actually innocent of the charges she was convicted, and thus failure to consider the claim will result in a miscarriage of justice. (Hab. Pet. at 2.) However, as discussed in more detailed *infra*, petitioner has failed to demonstrate that there was insufficient evidence for conviction. As a result, failure to consider this claim would not result in a miscarriage of justice.

Thus, this Court is barred from reviewing petitioner's sufficiency of the evidence claim because it was dismissed on an independent and adequate state procedural ground. Additionally, petitioner has failed to demonstrate either cause for or prejudice resulting from a failure of this Court to review this claim, or that a miscarriage of justice would occur if this Court fails to address it. In any event, as discussed *infra*, even if *arguendo* this claim was not procedurally barred, the Court concludes that it fails on the merits.

b. Circumstantial Jury Charge Claim

Finally, petitioner claims that the court's failure to give a circumstantial charge to the jury violated her Fourteenth Amendment rights. However, respondent argues that such a claim was not raised on direct appeal in the state court, and as such, this Court is barred from reviewing the claim. (Resp't's Opp. at 23.) As discussed below, because petitioner did not raise the circumstantial jury charge claim on direct appeal, the claim is procedurally barred.[3]

---

3  Respondent also argues that petitioner's excessive, harsh and vindictive sentence claims are also barred from review because they were not raised on direct appeal. Specifically, respondent asserts that petitioner raised harsh and excessive sentence claims to the Appellate Division framed as violations of state, rather

The claim petitioner asserts was reviewable from the record; however, it was not raised on direct appeal and is therefore barred from review. Because petitioner no longer has any state remedies available to her, which occurs when a petitioner has defaulted on her federal claim in state court, she meets the technical requirements for exhaustion. *Coleman*, 501 U.S. at 732. Thus, petitioner's claims are deemed exhausted under 28 U.S.C. § 2254(b) because petitioner no longer has remedies available in the New York State Courts. However, though exhausted, petitioner's claim is procedurally defaulted because she did not raise it on direct appeal. *See Graham v. Costello*, 299 F.3d 129, 133 (2d Cir. 2002).

Petitioner has not demonstrated that the defaulted claim can nevertheless be reviewed by this Court. Petitioner is not entitled to have this claim reviewed in a habeas proceeding unless she can demonstrate both cause for the default and prejudice if the Court fails to review it, or if she can demonstrate that the failure to consider the claim will result in a miscarriage of justice. Petitioner does not set forth any factors that would have given the court a basis for determining that the claim was not reasonably available to defense counsel during the trial. Furthermore, to the extent petitioner is suggesting that defense counsel was ineffective in failing to make a motion to incorporate a circumstantial evidence jury instruction, petitioner is wrong. *See infra* Section III.B.4.

While petitioner contends that she is innocent of the charges (with the possible exception of the criminal possession of a weapon in the third degree charge),[4] the evidence presented at trial was sufficient to established petitioner's guilt beyond a reasonable doubt. *See infra* Section III.B.1. Accordingly, petitioner's claim is deemed to be exhausted, but is procedurally barred from review by this Court. In any event, assuming *arguendo* that this claim is reviewable, it is substantively without merit, as discussed *infra*.

B. Merits Analysis

1. Insufficient Evidence[5]

Petitioner contends that the evidence presented at trial was insufficient to support a finding of guilt beyond a reasonable doubt.

---

than federal, law. (Resp't's Opp. at 33 n.14.) First, the Court concludes that it is not, in fact, apparent whether petitioner was raising excessive and harsh sentence claims based on state rather than federal law since petitioner did not state a basis for relief explicitly and also cited federal caselaw in her appeal. However, it is clear that petitioner did not raise a vindictive sentence claim on direct appeal so that this basis for review is barred for the reasons stated below. In any event, the Court addresses petitioner's excessive, harsh, and vindictive sentence claims on the merits and concludes that they do not provide a basis for relief for the reasons stated below. *See infra* Section III.B.2.

[4] In her habeas petition, petitioner stated that the charge of possession of a weapon in the third degree was the only charge that she was "actually guilty of." (Hab. Pet. at 2.)

[5] In her habeas petition, petitioner listed claims that the "charges [were] not proven beyond a reasonable doubt" and that the burglary count was "not supported by legally sufficient proof" as two separate grounds for reversal of her conviction. (Hab. Pet. at 5, 7.) It appears that petitioner is separately challenging the sufficiency of the evidence for her conviction of all the charges and the burglary charge separately. Because the first insufficiency of the evidence claim applicable to all charges essentially incorporates the burglary charge, the Court will evaluate plaintiff's two claims for insufficiency of the evidence as one claim regarding all of the charges.

(Hab. Pet. at 5-6.) As noted above, this claim is procedurally barred from review. In any event, viewing the evidence in the light most favorable to the prosecution, this Court concludes that a rational jury could have found petitioner guilty beyond a reasonable doubt. The Appellate Division's conclusion, in the alternative, that the evidence was sufficient was not contrary to, or based on an unreasonable application of, clearly established federal law, nor was it an unreasonable determination of the facts in light of the entire record. Thus, habeas relief based on this claim is denied.

a. Legal Standard

The law governing habeas relief from a state conviction based on insufficiency of the evidence is well established. A petitioner "bears a very heavy burden" when challenging the legal sufficiency of the evidence in an application for a writ of habeas corpus. *Einaugler v. Sup. Ct. of the State of N.Y.*, 109 F.3d 836, 840 (2d Cir. 1997) (quoting *Quirama v. Michele*, 983 F.2d 12, 14 (2d Cir. 1993)).

A criminal conviction in state court will not be reversed if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also Policano v. Herbert*, 507 F.3d 111, 115-16 (2d Cir. 2007) (stating that "[i]n a challenge to a state criminal conviction brought under 28 U.S.C. § 2254 . . . the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt" (quoting *Jackson*, 443 U.S. at 324)); *Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002) ("[W]e review the evidence in the light most favorable to the State and the applicant is entitled to habeas corpus relief only if no rational trier of fact could find proof of guilt beyond a reasonable doubt based on the evidence adduced at trial."). A criminal conviction will stand so long as "a reasonable mind 'might fairly conclude guilt beyond a reasonable doubt.'" *United States v. Strauss*, 999 F.2d 692, 696 (2d Cir. 1993) (internal quotation marks omitted) (quoting *United States v. Mariani*, 725 F.2d 862, 865 (2d Cir. 1984)). Even when "faced with a record of historical facts that supports conflicting inferences [a court] must presume—even if it does not affirmatively appear in the record—that the trier of fact resolves any such conflicts in favor of the prosecution, and must defer to that resolution." *Wheel v. Robinson*, 34 F.3d 60, 66 (2d Cir. 1994) (quoting *Jackson*, 443 U.S. at 326).

A habeas petitioner cannot prevail on a claim of legally insufficient evidence unless he can show that, viewing the evidence in the light most favorable to the prosecution, "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Flowers v. Fisher*, 296 F. App'x 208, 210 (2d Cir. 2008) (quoting *Jackson*, 433 U.S. at 324). When considering the sufficiency of the evidence of a state conviction, "[a] federal court must look to state law to determine the elements of the crime." *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999).

b. Analysis

The prosecution presented evidence from which a rational trier of fact could conclude beyond a reasonable doubt that the petitioner was guilty of all of the crimes charged. Jurors heard evidence that petitioner was outside of the Singer residence at the time of the burglary. They

heard evidence that a loud alarm sounded soon after an intruder exited the Singer home. Petitioner testified that she accompanied a man that she identified as "Damien" on a motorcycle to Long Island from Brooklyn. Detectives testified that petitioner had a loaded gun on her person as well as a ski mask and gloves despite the fact that it was over seventy degrees outside. A forensic scientist testified that she determined that the mask had petitioner's DNA around the mouth area. Several officers testified that they chased the petitioner, who was riding a motorcycle, to a cul de sac area, at which time the motorcycle fell to the ground and petitioner ran into the woods. Officers further testified that petitioner dropped a black bag while running into the woods. The jury heard testimony that this black bag contained seven credit cards and a purse from the Singer house, duct tape, a crow bar, and a flashlight. Petitioner admitted to having a loaded gun on her person and officers corroborated that she had this gun. This evidence, taken together, could have led a rational jury to conclude beyond a reasonable doubt that Nesbitt committed, or aided Damien in committing, all of the counts that she was convicted of arising out of the burglary: first-degree burglary,[6] third-degree criminal possession of a weapon,[7] seven counts of fourth-degree criminal possession of stolen property, and two counts of fifth-degree criminal possession of stolen property.

In sum, the Appellate Division's conclusion that the evidence was sufficient for a conviction on all the charges is not contrary to, or an unreasonable application of, clearly established federal law, nor is it based on an unreasonable determination of the facts.

2. Petitioner's Sentence Was Not Harsh, Vindictive, and Excessive

Petitioner also claims that the sentence imposed by the trial court was harsh, vindictive, and excessive and was imposed in retaliation for her decision to go to trial. (Hab. Pet. at 8-9.) Respondent argues that petitioner's sentence was not only within the prescribed statutory range, but it was also more lenient than the criminal statute required. (Resp't's Opp. at 33.) The Appellate Division affirmed the petitioner's sentence on direct appeal. *Nesbitt*, 837 N.Y.S.2d at 579. The Court concludes that the Appellate Division's determination that petitioner's sentence was not excessive was not contrary to, or an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of the facts. Petitioner's vindictiveness claim is unexhausted, as noted above, and is also meritless for the reasons set forth below.

---

[6] Petitioner seems to be under the impression that she had to have been physically present in the burglarized house to be convicted of first-degree burglary. In her habeas petition, petitioner alleged that because there is no evidence that petitioner was physically present in the burglarized home, the prosecution did not prove all of the elements of first-degree burglary. However, as the trial court explained in the jury instructions, the first-degree burglary charge required the jury to find beyond a reasonable doubt that the petitioner aided and abetted an accomplice who committed the criminal act, namely, the first-degree burglary. (*See* Tr. at 671-72.)

[7] Petitioner does not contest the sufficiency of the evidence for this count; petitioner admits that she was guilty of this count and states that if she were retried, she would plead guilty to that count. (Hab. Pet. at 1.)

a. Legal Standard

Where a petitioner is claiming that her sentence is harsh and thereby excessive, for purpose of habeas review, "[n]o federal constitutional issue is presented where . . . the sentence is within the range prescribed by state law." *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992); *see also Santiago v. Riley*, 92-cv-2302 (DRH), 1993 WL 173625, at *4 (E.D.N.Y. May 14, 1993) ("Where the sentence imposed by a state trial judge is within the statutorily prescribed range, the constitution is not implicated and there is no federal question for habeas corpus review."); *Underwood v. Kelly*, 692 F. Supp. 146, 152 (E.D.N.Y. 1988), *aff'd,* 875 F.2d 857 (2d Cir. 1989).

Furthermore, a petitioner may not be punished for going to trial. The Sixth Amendment guarantees the right to a trial by jury, and a court may not penalize a person for exercising a right guaranteed under the Constitution. *See Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978) ("To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort."). However, plea bargains, which often require a defendant to choose between going to trial and pleading guilty in order to receive a reduced sentence, are an important and constitutional part of the criminal justice system. *See Corbitt v. New Jersey*, 439 U.S. 212, 218-19 (1978) ("[T]here is no *per se* rule against encouraging guilty pleas."). "The criminal process, like the rest of the legal system, is replete with situations requiring 'the making of difficult judgments' as to which course to follow. Although a defendant may have a right, even of constitutional dimensions, to follow whichever course he chooses, the Constitution does not always forbid requiring him to choose." *Bonner v. Smith*, No. 05-CV-4209 (JG), 2006 U.S. Dist. LEXIS 6925, 2006 WL 463499, at *25-26 (E.D.N.Y. Feb. 24, 2006) (quoting *McGautha v. California*, 402 U.S. 183, 213 (1971)). *See also Brady v. United States*, 397 U.S. 742, 750-51 (1970).

b. Analysis

There is no evidence that petitioner's sentence was vindictive. Petitioner contends that the court bailiff told petitioner that if she went to trial, she would be retaliated against. This claim is conclusory and wholly unsupported by the record. There is no evidence that the judge threatened petitioner with a more severe sentence if she elected to go to trial, which would, if it actually happened, "establish a *per se* violation of the defendant's Sixth Amendment right to a trial . . . ." *Fielding v. Lefevre*, 548 F.2d 1102, 1106 (2d Cir. 1977) (citations omitted). Finally, to the extent petitioner argues that her sentence is vindictive because it is so severe (Hab. Pet. at 9), that claim is meritless because petitioner's sentence was not excessive.

The sentence petitioner is serving is within the permitted statutory range, as petitioner herself admits. (*See* Pet'r's Reply Br. at 13.) Thus, there is no federal question for habeas review. In this case, petitioner was sentenced to a total of twelve years of imprisonment. The top charge, Burglary in the First Degree, is a Class B Violent Felony. N.Y. Penal Law § 70.02(1)(a). According to New York Penal Law Section 70.02(3)(a), for a Class B Violent Felony "the term must be at least five years and must not exceed twenty-five years." Petitioner was sentenced to twelve years, which is in the prescribed statutory range. Therefore, since petitioner's sentence was within the statutorily prescribed range, there is no federal question for habeas review. The

sentences for all of the other charges are being served concurrently.[8]

In sum, the Court finds that the Appellate Division's conclusion that petitioner's sentence was not retaliatory, excessive, or vindictive, was not contrary to, nor an unreasonable application of, clearly established federal law. Nor was it based on an unreasonable determination of the facts. Therefore, petitioner's application for habeas corpus relief on this ground is denied.

### 3. Failure to Give a Circumstantial Jury Charge

Finally, petitioner contends that the jury instructions were improper because, based on the evidence presented in support of the burglary and possession of stolen property charges, a jury charge on circumstantial evidence should have been included and that failure to include such a charge was in violation of her Fourteenth Amendment rights. (Hab. Pet. at 6.) As discussed *supra*, this claim was not thoroughly exhausted in state court and is thus barred from review. In any event, as discussed below, this Court finds that the jury instructions were proper, and habeas relief on this claim is unwarranted.

#### a. Legal Standard

In criminal cases "which depend *entirely* upon circumstantial evidence[,]. . . the facts from which the inference of the defendant's guilt is drawn must be established with certainty – they must be inconsistent with his innocence and must exclude to a moral certainty every other reasonable hypothesis." *Floyd v. Miller*, No. 01 Civ. 2097 (JBW), 2003 WL 21845995, at *7 (E.D.N.Y. Aug. 6, 2003) (quotation marks omitted) (quoting *People v. Barnes*, 406 N.E.2d 1071, 1073 (N.Y. 1980)). However, under New York law, this standard only applies to cases dealing exclusively with circumstantial evidence. A case that includes any direct evidence, or a combination of direct and circumstantial evidence, "does not qualify for the circumstantial evidence instruction." *People v. Roldan*, 666 N.E.2d 553, 554 (N.Y. 1996); *Norwood v. Atis*, 487 F. Supp. 2d 321, 333-34 (W.D.N.Y 2007) ("[A]s prosecution's case rested upon both direct and circumstantial evidence, the court was not obligated to provide the requested . . . circumstantial evidence charge" (quotation marks omitted) (quoting *People v. Pagan*, 576 N.Y.S.2d 311 (N.Y. App. Div. 1991), *lv. denied*, 580 N.E.2d 769 (N.Y. 1992)).

Jury instructions violate due process if they "fail[ ] to give effect to [the] requirement" that the prosecution must prove every element of a charged offense beyond a reasonable doubt. *See Middleton v. McNeil*, 541 U.S. 433, 437 (2004) (per curiam). However, "a state prisoner making a claim of improper jury instructions faces a substantial burden." *Devalle v. Armstrong*, 306 F.3d 1197, 1200 (2d Cir. 2002). The petitioner must establish that "'the ailing instruction by itself so infected the entire trial that the resulting conviction violat[ed] due process,' not merely [that] 'the instruction is undesirable, erroneous, or even universally condemned.'" *Id.* at 1201 (quoting *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977)); *see also Middleton*, 541 U.S. at 437 (explaining that "not every ambiguity, inconsistency, or deficiency in a jury

---

[8] In any event, even if the Court could review the sentence, the Court would find no basis to conclude that petitioner's sentence was grossly disproportionate to the crime committed so as to violate the Eighth Amendment given the nature of the criminal activity that was the subject of the conviction in the instant case.

instruction rises to the level of a due process violation").

b. Analysis

In this case, the Court finds that the trial court's instructions, even without a specific circumstantial evidence charge, were not erroneous and certainly did not constitute a due process violation. The facts of this case were supported by both circumstantial and direct evidence. Officers testified that they saw petitioner speeding away from the burglarized home. Another officer testified he saw her running into the woods, chased her, and saw her drop a black bag on the ground while running. There was also direct evidence that petitioner had a gun. Such evidence presented by these officers is direct evidence. Because the prosecution proffered such direct evidence, the trial court was not obliged to give a circumstantial evidence charge and thus did not err by failing to do so.

Even assuming *arguendo* that the trial court erred by not giving the jury a circumstantial evidence charge, this in and of itself does not violate petitioner's Fourteenth Amendment right to due process. Where, as here, a petitioner objects to the trial court's failure to instruct the court on a "circumstantial evidence" charge, a conviction should be disturbed "only when it appears reasonably likely that the jury understood the instructions to allow it to convict on evidence insufficient to prove every element of the offense charged beyond a reasonable doubt." *United States v. Desimone,* 119 F.3d 217, 227 (2d Cir.1997). Petitioner puts forth no evidence that this is the case. The trial court's instructions, viewed in their entirety, "correctly conveye[d] the reasonable-doubt concept to the jury." *Id.* The trial judge spoke at length about the concept of reasonable doubt. The relevant section of the jury instructions stated:

> [I]t is not sufficient to prove the defendant is probably guilty. In a criminal case, the proof of guilt must be stronger than that. It must be beyond a reasonable doubt. A reasonable doubt is an honest doubt to the defendant's guilt which a reason exist based upon the nature and quality of the evidence. It is an actual doubt, not an imaginary doubt. It is a doubt that a reasonable person has, acting in a matter of this importance, would be likely to entertain because of thee evidence that was presented or because of the lack of evidence that was presented.
>
> Proof of guilt beyond a reasonable doubt is proof that leaves you so convinced of the defendant's guilt that you have no reasonable doubt of the existence of any element of the crime or of defendant's identity as the person who committed the crime.

(Tr. at 659.)

The trial judge also explained each legal element for each count with which petitioner was charged (*id*. at 666-81), and discussed the elements of aiding and abetting burglary (*id*. at 670-71). The jury instructions were thus adequate. Furthermore, as discussed *supra*, there was overwhelming evidence of petitioner's guilt. Petitioner has not presented any evidence tending to show that the jury instructions below deprived her of her Fourteenth Amendment rights.

4. Ineffective Assistance of Counsel

Petitioner contends that she received ineffective assistance of trial counsel

because counsel: (1) failed to investigate a "911" tape and the DNA evidence on the mask; (2) failed to object to prosecutorial misconduct during summation; (3) failed to make an adequate motion for a trial order of dismissal; and (4) failed to object to possible errors within the trial that make the trial inherently unfair. (Hab. Pet. at 10.) As discussed below, the Court finds that each of petitioner's arguments is without merit.

a. Legal Standard

Under the standard promulgated in *Strickland v. Washington*, 466 U.S. 668 (1984), a defendant is required to demonstrate two elements in order to state a successful claim for ineffective assistance of counsel: that (1) "counsel's representation fell below an objective standard of reasonableness," *id.* at 680, and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

The first prong requires a showing that counsel's performance was deficient. However, constitutionally effective counsel embraces a "wide range of professionally competent assistance," and "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 690). The performance inquiry examines the reasonableness of counsel's actions under all circumstances, keeping in mind that a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight." *Greiner*, 417 F.3d at 319 (quoting *Rompilla v. Beard*, 545 U.S. 374, 389 (2005)). In assessing performance, a court must apply a "heavy measure of deference to counsel's judgments." *Greiner*, 417 F.3d at 319 (quoting *Strickland*, 466 U.S. at 691). "'A lawyer's decision not to pursue a defense does not constitute deficient performance if, as is typically the case, the lawyer has a reasonable justification for the decision,'" *DeLuca v. Lord*, 77 F.3d 578, 588 n.3 (2d Cir. 1996), and 'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" *Id.* (citing *Strickland*, 466 U.S. at 690-91). Moreover, "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.*

The second prong focuses on prejudice to the defendant. The defendant is required to show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "Reasonable probability" means that the errors were of a magnitude such that it "undermine[s] confidence in the outcome." *Pavel v. Hollins*, 261 F.3d 210, 216 (2d Cir. 2001) (quoting *Strickland*, 466 U.S. at 694). "[T]he question to be asked in assessing the prejudice from counsel's errors . . . is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Henry v. Poole*, 409 F.3d 48, 63-64 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 695). "'An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.'" *Lindstadt v. Keane*, 239 F.3d 191, 204 (2d Cir. 2001) (quoting *Strickland*, 466 U.S. at 691). Moreover, "[u]nlike the determination of

trial counsel's performance under the first prong of Strickland, the determination of prejudice 'may be made with the benefit of hindsight.'" *Hemstreet v. Greiner*, 491 F.3d 84, 91 (2d Cir. 2007) (quoting *Mayo v. Henderson*, 13 F.3d 528, 534 (2d Cir. 1994)).

This Court proceeds to examine the petitioner's claim, keeping in mind that the habeas petitioner bears the burden of establishing both deficient performance and prejudice. *United States v. Birkin*, 366 F.3d 95, 100 (2d Cir. 2004). As set forth below, petitioner's claims, taken alone or together, fail to satisfy either element of the *Strickland* test.

b. Analysis

i. Failure to Investigate Evidence

There is no evidence in the record to support petitioner's claim that counsel was deficient for failing to investigate the "911" tape or the DNA evidence. Petitioner contends that the 911 tape would reveal that it was Damien, and not petitioner, who was seen by Singer in the home, and Damien was wearing a mask. She further contends that her own reading of the forensic scientist's reporting of the alleles comparison seems to suggest it is not her DNA on the mask. (Hab. Pet. at 10; Pet'r's Reply Br. at 18.) As discussed below, both of these arguments are without merit.

Petitioner is unable to establish that counsel's performance was deficient. There is no evidence that counsel failed to investigate either the tape or the DNA evidence beyond petitioner's bare assertions. As for the tape, as respondent points out, counsel received a copy of the 911 tape. (Resp't's Opp. at 38.) Nothing in the court record or in petitioner's brief demonstrates that counsel did not listen to the tape. Counsel may have appropriately exercised his discretion to not pursue arguments based on the tape because of what he heard on the tape. In fact, Singer testified that she saw a male intruder, and not Nesbitt, so it is unclear what exactly petitioner expected counsel to accomplish with the tape.[9] Additionally, aside from the petitioner's own reading of the DNA forensic analysis, petitioner sets forth no evidence that there were any factual problems with the testimony of the forensic scientist that would suggest to counsel that he should have investigated it further.

Moreover, even assuming *arguendo* that counsel was somehow deficient, petitioner makes no argument as to how any alleged failures prejudiced her. As discussed *supra*, there was overwhelming evidence of petitioner's guilt on all counts of which she was convicted. The prosecutor set forth evidence that petitioner went from Brooklyn to Long Island with an acquaintance who entered the home. Petitioner testified that she waited outside of the home parked down the street on a motorcycle with a loaded gun on her person. Officers and detectives testified that they chased her into the woods and found items from the burglarized home, along with duct tape, a flashlight and a crow bar, in a black bag she dropped. Another officer testified that he found a mask and gloves in her sweatshirt pocket. Petitioner admits to having a loaded gun on her at the time, and she handed it over to police on request. Even if the 911 tape revealed, as petitioner contends, that the intruder was

---

[9] Respondent also points out that the 911 tape "does not contain a description by the victim that the burglar was masked." (Resp't's Opp. at 39.) As discussed *supra* in footnote 6, petitioner was under the misimpression that she had to be physically present in the home to be convicted of the burglary charge.

masked, there is sufficient evidence for a rational jury to conclude beyond a reasonable doubt that petitioner aided and abetted the burglary. Thus, there is no reason to believe that absent the alleged deficiency, the jury would have reached a different conclusion. *See Butts v. Walker*, No. 01 CV 5914 (JG), 2003 WL 22670921, at *8 (E.D.N.Y. Nov. 6, 2003). Accordingly, petitioner cannot satisfy the second prong of *Strickland*.

Petitioner's claim that counsel was ineffective for failing to investigate both the DNA evidence and the 911 tape is consequently without merit.

### ii. Counsel's Failure to Object to Improper Summation

Petitioner contends that she received ineffective assistance of trial counsel because counsel failed to make the appropriate objections during the prosecutor's summations. Specifically, petitioner objects to statements by the prosecutor that refer to her as being a liar, and to a statement concerning the words that were printed on her shirt.[10] For reasons set forth below, the Court finds that there is no basis to conclude that trial counsel's performance was constitutionally defective, or that there was any prejudice to petitioner.

First, petitioner has not satisfied the first prong of *Strickland* because she is unable to demonstrate that counsel's representation fell below an objective standard of reasonableness. First, there are strategic reasons that an attorney might "forgo objections: the conclusion that additional objections might have annoyed the judge or jury; the possibility that the prosecutor, given enough rope, would alienate the jury; the desire not to call attention to unfavorable evidence or to highlight unfavorable inferences." *Taylor v. Fischer*, No. 05 Civ. 3034 (GEL), 2006 WL 416372, at *5 (S.D.N.Y. Feb. 21, 2006). Thus, even if some of the comments during summations were objectionable, counsel is not necessarily deficient for not objecting. It is also apparent that counsel was active during summations. Specifically, counsel made repeated objections throughout the prosecutor's summations. (*See, e.g.*, Tr. at 634 ("Objection. That is not her testimony"); *Id*. at 636 (where counsel had a side bar conference off of the record); *Id*. at 637.)

Moreover, the prosecution's comments were permissible as rebuttal to petitioner's summation. Defense counsel's summation focused largely on both the testimony of the defendant and the discrepancies in the police officers' accounts of the evening. (*See, e.g., id*. at 584, 592, 595-96, 626.) The prosecutor was thus entitled to rebut defense counsel's summation and discuss the credibility of each witness, including the petitioner. *See Celleri v. Marshall*, No. 07-CV-4114 (JFB), 2009 WL 1269754, at *17 (E.D.N.Y. May 6, 2009) ("[U]nder both New York and federal law, the prosecutor was entitled to rebut defense counsel's summation with contrary assertions."); *Jones v. Keane*, 250 F. Supp. 2d 217, 236-37 (W.D.N.Y. 2002) (holding that the prosecutor's characterization of the defendant as a "liar" and "con artist" during summations was not improper). Thus, the prosecutor's characterizations of petitioner as a liar were not improper comments to make during summation, and such comments do not amount to prosecutorial misconduct. Petitioner's claim of prosecutorial misconduct based on the expression on petitioner's shirt was taken out of context. The prosecutor's mentioning

---

[10] Petitioner was wearing a shirt that read "F**k Milk Got Pot" when arrested. (Tr. at 310.)

of the writing on petitioner's shirt was made as part of a rebuttal to defense counsel's testimony. Specifically, the prosecutor was rebutting defense counsel's allegations that the officer was not credible because he remembered her wearing a t-shirt and not a sweatshirt (Tr. at 587-88); the prosecutor explained that the officer may have recalled the t-shirt that petitioner was wearing underneath her sweatshirt because of the content of the expression written on it (*id*. at 630).

In any event, even assuming *arguendo* that petitioner was able to show that counsel's performance was deficient, petitioner cannot show that she was prejudiced as a result. As an initial matter, evidence of petitioner's guilt was overwhelming, as discussed *supra* in section III.B.1.b. Furthermore, any prejudicial impact of the statements was neutralized by the trial judge's numerous instructions to the jury. The judge instructed the jury before opening arguments, before closing arguments, and again during the prosecutor's summations, that "counsel's arguments are not evidence in the case." (Tr. at 575, 637.) During several of defense counsel's objections, the trial judge would again remind the jury that counsel's arguments were not evidence, but merely opinions of counsel. The judge went a step further to ensure that the jury would not take statements in the summations as facts by banning the jury from taking any notes during either summation. (Tr. at 637 ("That is why you're not allowed to take notes. This is the people's theory [of] how the crime was committed . . . .").) Thus, even if there were any deficiencies by counsel in failing to object to the prosecutor's statements, the trial judge took curative steps to ensure neither side was prejudiced. *See Celleri*, 2009 WL 1269754 at *18. Accordingly, petitioner cannot satisfy the second prong of *Strickland*. In short, the improper summation claim has no merit.

### iii. Counsel's Failure to Make a Motion to Dismiss at Trial

Finally, there is insufficient evidence in the record to support petitioner's claim that counsel was deficient for failing to make a motion to dismiss at trial. Because counsel did not make a motion to dismiss based on insufficiency of the evidence, petitioner was procedurally barred from bringing up her sufficiency of the evidence claim discussed *supra* on direct appeal. In any event, as discussed below, petitioner is unable to satisfy *Strickland*, and thus petitioner's claim about counsel's failure to make a trial order of dismissal fails on the merits.

Petitioner has not satisfied the first prong of *Strickland* because she is unable to demonstrate that counsel's performance fell below a level of reasonableness. Petitioner wanted counsel to make a motion to dismiss after the prosecution rested so as to preserve her ability to appeal the sufficiency of the evidence claims. However, as discussed *supra*, the evidence against her was overwhelming *see supra* III.B.1.b, and trial counsel is not required to make a meritless motion. Furthermore, to the extent petitioner also wanted trial counsel to make a motion for the inclusion of a circumstantial evidence instruction, it is apparent that such a motion would be meritless, *see supra* III.B.3, and trial counsel is not required to make a meritless motion.

Even assuming *arguendo* that counsel's performance was deficient, petitioner is unable to demonstrate that she was prejudiced as a result. As discussed *supra*, petitioner's sufficiency of the evidence claim is meritless. Thus, even if counsel had made such an objection, thereby preserving

petitioner's ability to contest the sufficiency of the evidence, petitioner's sufficiency claim fails on the merits. The evidence against petitioner was overwhelming. Again, there was sufficient evidence for a reasonable jury to conclude beyond a reasonable doubt that petitioner was guilty of the crimes for which petitioner was convicted. Thus, the second prong of *Strickland* cannot be met. In short, this claim has no merit.

### iv. Counsel's Failure to Object to Errors in the Trial

Petitioner contends that counsel failed to object to misconduct by the judge, court bailiff, and prosecutor that occurred during jury deliberations. Specifically, petitioner contends that the three colluded to tamper with the jury that seemed to be leaning towards a dismissal of the burglary charge. She claims that after a jury note inquired about whether or not jurors could dismiss some but not all charges, the prosecutor and judge at the judge's bench had a "private conversation" off of the record without defense counsel present. (Pet'r's Supp. Reply Br. at 32-33.) Petitioner claims that the prosecutor then looked annoyed and had a whispered conversation with the court bailiff. The judge subsequently granted a recess for the day. The next day, the jury returned with a guilty verdict on all counts.

As an initial matter, petitioner's allegations that said conversations took place are entirely conclusory and are wholly unsupported by the record. Even assuming *arguendo* that the conversations occurred, petitioner has not satisfied the first prong of *Strickland* by showing that counsel's representation fell below an objective standard of reasonableness. Petitioner argues that counsel did not object to such private conversations. However, there are strategic reasons that an attorney might "forego objections." *Taylor*, 2006 WL 416372, at *5. Counsel may have determined that an objection was not necessary because he had no reason to believe that anything discussed affected the case in a material way. It is likely that trial counsel did not share petitioner's speculation of a conspiracy against her even if some sort of exchange occurred off the record either between the judge and prosecutor, or the prosecutor and bailiff.[11]

Even if petitioner was able to show that counsel's performance was deficient, petitioner cannot satisfy the second prong of *Strickland* by showing that she was prejudiced by such deficiency. The evidence of petitioner's guilt was overwhelming on all charges as discussed *supra*. *See* Section III.B.1. The jury spent several days deliberating, and the jury reached a unanimous decision on all counts. Thus, there is no reason to believe that absent the alleged deficiency, the jury would have reached a different conclusion on any of the charges. *See Butts*, 2003 WL 22670921 at *8.

---

[11] To the extent petitioner is arguing that trial counsel should also have objected to the trial judge granting a recess at 4 p.m. the day before the jury returned a guilty verdict (Pet'r's Reply Br. at 19), that claim is similarly without merit. Petitioner's trial counsel may not have objected because there was no evidence that anything improper was taking place even if, as petitioner suggests, "private" conversations between the prosecution, judge, and bailiff took place not long prior to the recess. Nor does the fact that petitioner arrived immediately prior the jury verdict (*id.* at 20) suggest some collusion against the petitioner. Furthermore, even if petitioner's trial counsel was deficient in not objecting to any of this conduct, petitioner was not prejudiced for the reasons stated below.

* * *

In sum, having carefully analyzed all of petitioner's claims, the Court concludes that the petition must be denied. Petitioner's claims concerning the sufficiency of the evidence and failure to give a circumstantial evidence charge are procedurally barred. In any event, all of petitioner's claims are meritless.

### IV. CONCLUSION

For the reasons set forth herein, the Court finds that the petitioner has demonstrated no basis for habeas relief under 28 U.S.C. § 2254. Therefore, the petition for a writ of habeas corpus is denied. Because petitioner has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue. *See* 28 U.S.C. § 2253(c)(2). The Clerk of the Court shall enter judgment accordingly and close this case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: August 8, 2011
       Central Islip, New York

* * *

Petitioner is proceeding *pro se*. Respondent is represented by Kathleen M. Rice, District Attorney of Nassau County, by Andrea M. DiGregorio, 262 Old Country Road, Mineola, New York, 11501.